IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15-CR-00485 |
| | ) | The Honorable Virginia M. Kendall |
| v. | ) | |
| | ) | |
| EDGAR ROQUE, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT EDGAR ROQUE'S OBJECTIONS TO PSIR,
SENTENCING ANALYSIS, AND SENTENCING MEMORANDUM**

Now comes the Defendant, EDGAR ROQUE ("Mr. Roque"), by and through his attorney, Kirt J. Hopson, and provides the following: objections to the pre-sentence investigation report (PSIR), sentencing analysis, and sentencing memorandum.

Mr. Roque respectfully requests this Court to fashion a sentence that is sufficient, but not greater than necessary, to comply with the sentencing goals established by Congress in 18 U.S.C. § 3553(a). The Court's sentence should reflect "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a).

**I.    Introduction**

Mr. Roque pled guilty for Counts 1 and 7 in this case, for conspiracy to possess with intent to distribute and distribution of a controlled substance (21 U.S.C. § 846, 21 U.S.C. § 84l(b)(l)(A)) and conspiracy to commit money laundering (18 U.S.C. § l 956(h), 18 U.S.C. § 1956(a)). In these objections, sentencing analysis, and memorandum, Mr. Roque seeks neither to disingenuously diminish his culpability nor to allow unsubstantiated allegations to remain unrebutted. Instead, Mr. Roque asks the Court to contemplate his characteristics in light of the offense conduct when considering an appropriate sentence.

II.     **PSIR Objections.**

The PSIR has determined that the Total Offense Level is 43, the Criminal History Category is II, and the advisory guideline sentencing range is life imprisonment. Here, the November 2016 guidelines apply.

A. **Criminal History Category**

Mr. Roque disagrees with the total offense level. He agrees with the PSIR's calculation of his criminal history category; however, he believes that this category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes. Under U.S.S.G. § 4A1.3(b), this Court can depart downward if "reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes . . . ." U.S.S.G. §4A1.3(b); *see also Unites States v. Marin-Castano*, 688 F.3d 899, 904 (7th Cir. 2012) (district courts are permitted to depart downward based on 4A1.3(b)).

Here, both points are for traffic offenses and had the probation period been less than one year, he would have 0 criminal history points. *See* USSG § 4A1.1(c). Additionally, it is noteworthy that despite the drug calculations involved in this offense, Mr. Roque's criminal history is entirely devoid of violence. Specifically, he has neither convictions for violent crimes nor arrests for violent crimes, and there are no allegations of violence connected to his offense.

Accordingly, Mr. Roque suggests that his criminal history category overstates his past conduct and respectfully requests that the Court apply the guidelines using a criminal history category of I.

B. **Leader Objection**

Mr. Roque objects to the 4-point enhancement for being a leader or organizer. The government and the probation department assert that Roque was the leader of the conspiracy, based largely on the testimony of Raul Navarro Galvan and Jesus Valencia. The testimony of these two witnesses are highly suspect. Valencia is a Defendant in this case and has an obvious motive to transfer responsibility. Further, he and Martell Jackson have limited first-hand

knowledge regarding the participants' involvement and the heroin quantities disputed in this case. Accordingly, Mr. Roque objects to the assertion that he is the organizer or leader of the conspiracy.

Instead, Mr. Roque participated in mid-to-upper-level managerial duties that do not warrant a leader or organizer enhancement. As can be seen in the analysis of the offense conduct of the PSIR, he is more aptly assigned to the role of manager or supervisor. In the Offense Conduct section of the PSIR, Mr. Roque is referenced as the leader, however in all the activities in evidence he is shown to be a co-conspirator. (PSIR, ¶¶ 17, 19, 21-23). In fact, even though the PSIR states that Mr. Roque was the leader, it also asserts that Mr. Roque "had numerous individuals working for *and with him* in various roles." [emphasis added] (PSIR, ¶ 19). If Mr. Roque were in fact the leader, he would not be working *with them*—they would be working *for him*. He would not, for example, participate in the exceptionally risky grunt work of collecting packages—yet the government asserts Mr. Roque did exactly this. (PSIR, ¶ 21). Furthermore, as Navarro-Galvan admitted, though he said that he and Mr. Roque initially did most negotiating, it was Navarro-Galvan who had to make the final decision. (*Government's Version of the Offense, Ex. B* 32:3-6). As such, Mr. Roque respectfully objects to the addition of 4 points for the leadership role. Instead, Mr. Roque suggests that a 3-point manager or supervisor addition is more appropriate (USSG § 3B1.1).

C. **Quantity Objection**

Mr. Roque disputes the alleged amount of heroin. Specifically, Mr. Roque objects to the PSIR's acceptance of the government's claim of the alleged quantity of heroin—100 kilograms—from which the PSIR calculates the base offense level. (PSIR, ¶ 34). It is the government's burden to establish its proposed quantities by a preponderance of evidence. The government relies, in large part, on uncorroborated and unreliable testimony. Mr. Roque respectfully suggests that the government cannot meet its burden regarding the alleged heroin quantity.

For example, Navarro-Galvan's allegations against Mr. Roque were materially

inconsistent and even contradictory. The only consistency was the benefit he received for his evolving version of events. Put simply, he is not a credible witness. As the Court may remember, Navarro-Galvan was a member of a largescale, related conspiracy but—incredibly–served only *four years and ten months* for his deeds. This, despite claiming to be the supplier to Mr. Roque. This, despite having a *criminal history category VI*, serving *two terms of imprisonment*, and having *twice been deported*. Specifically, his sentence was amended to "time considered served" only after he accused Mr. Roque of increasingly severe drug crimes, which he "remembered" only after his first round of accusations failed to entirely set him free. (*See, for example*, *Government's Version of the Offense, Ex. B*, 60:5-19). Navarro-Galvan testified that the reason his proffers were so contrary to his court sworn testimony—for example, that he supplied only marijuana, but then claimed to supply cocaine, and then claimed to supply heroin, and finally claimed to supply an ever-increasing quantity of both cocaine and heroin—was that the certified court reporters must have made a mistake. (*Government's Version of the Offense, Ex. B*, 72:5-73:2; 91:9-93:14). Although he claimed his evolving version of events were not lies, he admitted to regularly lying to law enforcement in the past when he thought it was in his interest to do so. (*Government's Version of the Offense, Ex. B, 62:21-23;93:16-94:6*). Counsel respectfully suggests Navarro-Galvan demonstrably continued to lie in this case as well. He is simply not a credible witness.

      Because this case involved a conspiracy, Mr. Roque understands he is legally responsible for the quantities recovered, but he disputes that he shipped or sold the quantities alleged. The alleged quantity is quite simply speculation based on testimony from people with strong motives to fabricate or exaggerate, such as Navarro-Galvan, or people with limited knowledge, such as Martell Jackson or Valencia. Accordingly, Mr. Roque disputes the heroin quantities as alleged.

    D.  <u>Stash House Objection</u>

      Mr. Roque objects to the 2-point enhancement for the stash house. As stated in the PSIR, Mr. Roque did not own or rent any of the stash houses. Again, Mr. Roque understands there may be legal responsibility, as this was a conspiracy, but he disputes personally owning, renting, or

maintaining the premises. (PSIR, ¶ 38).

### E. Firearm Objection

Mr. Roque objects to the 2-point enhancement for possessing a firearm. Specifically, though he possessed a firearm at some point, the possession was incidental to the offense. Specifically, the firearm was neither involved in violence nor used in the conspiracy.

Accordingly, the adjusted offense level is 42; his criminal history category is I; and his guidelines range is 360 months to life.

### III. Sentencing Analysis.

This case presents a unique set of circumstances for the Court. Undoubtedly, the Court has seen every type of drug case imaginable and has seen all sides of our war on drugs. Here, while Mr. Roque was a significant participant, he is not the kingpin the government portrays. Remember that Navarro-Galvan claimed to be Mr. Roque's supplier, yet for his culpability he served only 4 years and 10 months. It would also be unwarranted to unflinchingly blame Mr. Roque for our country's complicated relationship with illegal substances. To be sure, he bears responsibility for his actions; he knows only he is to blame for his circumstances. However, he was neither a viscous drug lord nor a violent participant.

Regarding his personal characteristics, Mr. Roque is a family man and a dedicated father, who not only provides financial support to his children but actively helped rear them as well. Mr. Roque knows he put himself in this situation, and he knows that other families have suffered due to his choices, but he also wants the Court to know that he takes his role as a father and husband seriously. Perhaps not seriously enough, the Court may think, but he is a caring man who tried to provide for his family and rear his children the best that he could. His family misses and loves him, and they remain supportive of his rehabilitation and his hopeful return to society.

"The Supreme Court's decision in *Booker* requires the sentencing judge first to compute the guidelines sentence just as he would have done before *Booker*, and then—because *Booker* demoted the guidelines from mandatory to advisory status—to decide whether the guidelines

sentence is the correct sentence to give the particular defendant." *United States v. Dean,* 414 F.3d 725, 729 (7th Cir. 2005). Therefore, it is in the sentencing judge's discretion to follow 18 U.S. Code § 3553 in considering the factors present when imposing a sentence. "Section 23553(a), unlike the guidelines themselves after *Booker,* is mandatory." *Id.* (citing *United States v. Booker,* 543 U.S. 220, 259 (2005)).

The factors that must be considered include: the seriousness of the offense, promoting respect for the law, just punishment, deterrence, protection of the public, and time of correctional treatment. 18 U.S.C. § 3553(a)(2). Especially considering the lack of violence, lack of an identifiable victim, minimal prior criminal history with only driving convictions, and the anticipated support of Mr. Roque's family upon release, the government's recommendation of 35 years far exceeds what is necessary for these qualifications to be met. The maximum guideline sentence, life, is grossly excessive and unnecessary for the deeds Mr. Roque has committed. "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a).

Although a sentence within the guideline range may be *presumptively* reasonable, "*Booker* does not hold that a Guidelines sentence must *conclusively* be presumed to be reasonable." *United States v. Mykytiuk,* 415 F.3d 606, 607 (7th Cir. 2005) (emphasis added) (citing *United States v. Crosby,* 397 F.3d 103, 115 (2d Cir. 2005)). Nonetheless, the proper guideline sentence must first be calculated.

A. <u>Offense Level Calculation</u>

Mr. Roque has plead guilty to violation of 21 U.S.C. § 846 and 18 U.S.C. § 1956(h), and he does not seek to recant his plea; however, there is not a preponderance of evidence presented by the government to show that there were 100 kilograms of heroin. Mr. Roque maintains the amount in the conspiracy was close to the amount seized, 30 kilograms of heroin. The PSR has determined that for a violation of 21 U.S.C. § 846, the guidelines provide a base offense level of 38 based on the amount of cocaine. Mr. Roque understands his responsibility for the possession and distribution of the drugs throughout the course of his involvement in the conspiracy.

Therefore, Mr. Roque agrees that his base offense level is 38.

Although Mr. Roque admits to firearm possession, he maintains that the firearm was not used in furtherance of the drug trafficking or money laundering, and no violent acts were committed. Therefore, he respectfully requests that the 2-point increase for gun possession be omitted.

Mr. Roque did not maintain, own, or rent premises or "stash houses," as stated in the PSIR. (PSIR, ¶ 38). It is acknowledged that, as part of the conspiracy, he has legal responsibility, but Mr. Roque maintains that he did not personally control any of the stash houses, and the government has not proven with a preponderance of the evidence that he did. Consistent with the PSIR's determination that this enhancement does not apply, the application note for (b)(12) provides: "Among the factors that court should consider in determining whether the defendant 'maintained' the premises are (A) whether the defendant held a possessory interest in (e.g. owned or rented) the premises and (B) the extent to which the defendant controlled access to or activities at, the premises." Therefore, a two-point increase is *not* warranted in this area.

The 2-level enhancement pursuant to USSG § 2D1.1(b)(15)(C) is warranted, thus the base offense level increases to 40.

Further, the PSIR has determined that since Mr. Roque was convicted under 18 U.S.C. § 1956(h), a 2-level enhancement to the base offense level is warranted.

Mr. Roque was not, however, an organizer or leader, as has been shown. Mr. Roque had some low-level managerial duties assigned to him, and thus a three-point addition may be more appropriate. (USSG § 3B1.1).

Additionally, the PSIR determined that Mr. Roque accepted responsibility and should receive a two-level reduction. Mr. Roque also timely notified the government of his intention to enter a plea of guilty and, thus, receives an additional one-level reduction. Therefore, at a total offense level of 42 and a criminal history category of I, Mr. Roque is facing an advisory sentencing guideline range of 360 months to life.

### B. Advisory Guideline Range

With an adjusted offense level of 42 and a criminal history category of I, Mr. Roque's advisory guideline range is 360 months to life. This range is greater than required by the parsimony principle. Mr. Roque would be nearly 60 years old upon release if he received a sentence of 30 years. His children would be fully grown. His parents, with whom he remains very close, will likely have passed away.

However, as stated in the PSIR, with respect to Count 1, statutorily the minimum term of imprisonment is 10 years, and the maximum is life. With respect to Count 7, the maximum term is 20 years. *(PSIR, ¶ 91).* Mr. Roque respectfully suggests that a term of imprisonment of 25 years is sufficient but not greater than necessary and is appropriate in this context.

### IV. Sentencing Memorandum

### A. Section 3353(a) Factors Counsel Against Sentencing Within the Guideline Range

Since *Booker*, the guideline range is but one factor of many to be considered under 18 U.S.C. § 3553(a). *See Booker,* 542 U.S. at 249 (relying on § 3553(a)(1)'s text stating that the court will consider "the nature and circumstances of the offense and the history and characteristics of the defendant."); *see also United States v. Ranum,* 353 F. Supp. 2d 984, 985 (E.D. Wis. 2005). (Adelman, J.). Section 3553(a) sets forth the factors to be considered by the Court.

### 1. The "Parsimony Provision"

Section 3553(a) requires courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." 18 U.S.C. § 3553(a) (West 2005); *see also Ranum,* 353 F. Supp. 2d at 986 & n.l. This has come to be known as the "parsimony provision." *See United States v. Jimenez-Beltre,* 440 F.3d 514, 525 &n.8 (1st Cir. 2006).

Commentators have noted that this provision, which was originally part of the House sentencing reform bill and was later added to the Senate resolution and adopted in committee, "is not just another 'factor' to be considered along with others set forth in Section 3553(a)—it sets

an independent limit on the sentence a court may impose." David L. Mccolgin & Brett G. Sweitzer, *Grid & Bear It,* 29 Champion 50, 50 (2005); *see also United States v. Foreman,* 436 F.3d 638, 644 n.1 (6th Cir. 2006) ("[A] district court's mandate is to impose 'a sentence sufficient, but not greater than necessary to comply with the purposes' of section 3553(a)(2)." The Court had further noted that "[A] district court's job is not to impose a 'reasonable' sentence… Reasonableness is the *appellate* standard of review in judging whether a district court has accomplished its task." *Id.*) (quoting 18 U.S.C. § 3553(a)); Richard S. Frase, *Punishment Purposes,* 58 Stan. L. Rev. 67, 83 (2005) (stating that the structure of section 3553(a), "which lists the parsimony principle first, suggests that this principle, "set[s] overall limits on the crime-control and other purposes which follow.").

It is the sentencing court's decision to determine what weight to place on any one of these individual factors. " The statute does not weight the factors. That is left to the sentencing judge, within the bounds of reason, which are wide." *United States v. Johnson*, 471 F.3d 764, 766 (7th Cir. 2006). Under these factors to be discussed, Mr. Roque respectfully submits that this Court impose a less than guideline sentence. Such a sentence would be sufficient but not greater than necessary to satisfy the goals of 18 U.S.C. § 3553(a) in light of the lack of violence, Mr. Roque's personal history, family, and individual characteristics, and rehabilitative potential.

Paragraph (2), which the parsimony provision indicates enumerates which purposes must be accomplished, is listed as follows:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). These purposes substantially correspond to the four traditional goals of criminal punishment: retribution, deterrence, incapacitation, and rehabilitation.

   a. <u>Retribution</u>

As to purpose (A), imposing a sentence of 25 years, would satisfy the goal of retribution.

The "heart of the retribution rationale is that a criminal sentence must be directly related to the *personal culpability* of the criminal offender" (emphasis added). *Tison v. Arizona*, 481 U.S. 137, 149 (1987). Mr. Roque never engaged in violence before, during, or after the charged offense. As this Court knows, the majority of narcotics cases involve frequent acts of overt violence. Those allegations are absent in Mr. Roque's offense, not by oversight or coincidence, but precisely because Mr. Roque is not a violent person. Respectfully, the Court should consider Mr. Roque's purposeful aversion to violence when considering its sentence. Mr. Roque's role in this offense demonstrates that there are mitigating degrees of culpability even in large-scale drug offenses.

Although Mr. Roque is relatively young, he would no longer be so upon his release. He would miss participating in his children's growth. Even with his previous criminal history, which is minimal and non-violent, it is clear that Mr. Roque is a family man who cares deeply about his children. Mr. Roque is from a "traditional, very close-knit Mexican family," and grew up in a "stable and supportive environment." (PSIR ¶ 68). Without him around, Mr. Roque's children are suffering emotionally. (PSIR ¶ 69). Mr. Roque's wife Christina stated that Mr. Roque "was the person who held us [the family] together… without him we're struggling to feel like a family." (PSIR ¶ 69). Notably, Christina has no plans to separate because she wants their children to remain a part of their father's life. (PSIR ¶ 70).

Mr. Roque has another son with another mother, and even though he is not ordered to pay child support and there is no court-ordered custody, Mr. Roque has provided financial support for the five-year-old child and visited his son three to four times per week. That support and visitation stopped upon his arrest, though Mr. Roque and his son have a good relationship as well.

Twenty-five years is a soul-crushingly-long time to be away from your family and from society. While Mr. Roque does not dispute that he was committed serious crimes and deserves punishment for them, the law provides that he should receive a sentence that is sufficient but not greater than necessary to punish him. Missing his children growing up and spending twenty-five years in prison is adequate punishment for his non-violent offense. In this case, a sentence longer

than this is unwarranted and excessive. Though there is "no identifiable victim," (PSIR, ¶ 26), 25 years is sufficient retribution for society at large.

   b. **Deterrence**

As to purpose (B), a below-guidelines sentence satisfies the principle of specific deterrence. Mr. Roque certainly understands the serious consequences of his actions. He knows that his regret may be too little and too late, but he remains sincerely remorseful for his choices—not because he got caught, but because he has evolved to see his actions as inherently harmful. Mr. Roque misses his family dearly. He knows he will miss at the very least a decade of their lives, but probably much more than that. He is thirty-one years old. By the time he is released, he will want to spend all the time he has left with his family, after having been apart from them for so long. Twenty-five years in prison is a life-changing event, and especially with the only prior convictions being driving-related convictions, a sentence of 25 years is sufficient deterrence to further crime. The likelihood that Mr. Roque will re-offend upon his release in his late-to-mid fifties is minuscule.

A below-guidelines sentence satisfies the principle of general deterrence. Experience has largely discredited the premise that decades-long sentences will win the drug war. Our nation's thirty-year experiment of persistently ratcheting up sentences for drug trafficking has done little, if anything, to diminish the drug trade. For decades, our state and federal courts have populated our prisons with drug defendants in massive, record-breaking numbers. We would have won the war years ago if harsh sentencing laws were the solution.

However, it is the *certainty* of punishment, not its severity, which deters crime. *See United States v. Kloda,* 133 F. Supp. 2d 345, 347-48 (S.D.N.Y. 2001) (Hellerstein, J.) (in context of business crimes); *United States v. Scroggins,* 880 F.2d 1204, 1206 (11th Cir. 1989) (noting Revolutionary War's introduction of concept); *United States v. Doe*, 101 F. Supp. 609, 613 n.5 (D. Conn. 1951) ("Certainly, severity of sentence is far less effective as a deterrent than certainty of detection and sentence."); *cf. Apprendi v. New Jersey*, 530 U.S. 466, 557 (2000) (The Guidelines note that "a sentencing system tailored to fit every conceivable wrinkle of each case

can become unworkable and seriously compromise *the certainty of punishment and its deterrent effect*.") (quoting U.S.S.G. Part A, at 1.2) (emphasis added); *Rushton v. Nebraska Public Power Dist.*, 653 F. Supp. 1510, 1522 (D. Neb. 1987) (former DEA Administrator testifying in public employer drug test case "that it is not the severity of the punishment, but the certainty of detection, that provides the greatest deterrent effect.")

Commentators have echoed the case law. See Anthony N. Doob & Cheryl Marie Webster, *Sentence Severity and Crime: Accepting the Null Hypothesis*, 30 Crime & Just. 143 (Univ. of Chicago 2003) (arguing that severity of punishment does not deter crime); Jeffrey Grogger, *Certainty vs. Severity of Punishment*, 29 Econ. Inquiry 297, 308 (1991) (concluding increased certainty of punishment generates significant deterrent effects while increased severity produces insignificant results); William N. Trumbull, *Estimations of the Economic Model of Crime Using Aggregate and Individual Level Data*, 56 S. Econ. J. 423, 427-37 (1989) (analyzing data to conclude certainty of punishment has greater deterrent effect than severity); Ann Dryden Witte, *Estimating the Economic Model of Crime with Individual Data*, 94 Q.J. Econ. 57, 81-83 (1980) (maintaining certainty of punishment produces greater deterrent effect than severity of punishment). Indeed, current empirical research on general deterrence shows that while certainty of punishment has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels reached that conclusion, as has every major survey of the evidence." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006).

A term of imprisonment amounting to 25 years is more than sufficient to deter the public under a "certainty of punishment" theory. A sentence of 25 years for committing a non-violent offense is more than enough deterrence. Hence, a 25-year sentence would satisfy the general deterrence requirement pursuant to §3553(a). Any greater sentence would violate the parsimony provision's edict that the Court impose the minimum sentence necessary.

    c. <u>Incapacitation</u>

As to purpose (C), which amounts to incapacitation, or protection from Mr. Roque for the

public, Mr. Roque will be incapacitated for 25 years if he receives the sentence requested by the defense. Mr. Roque's history does not at all reveal a violent man. During confinement, Mr. Roque requests rehabilitation for substance abuse, so that during the supervised release, it will be easier to follow the terms and refrain from any alcohol or drugs. A sentence of 25 years of incarceration is more than sufficient to adequately incapacitate Mr. Roque.

### d. Rehabilitation

As to purpose (D), rehabilitation is the most important part of Mr. Roque's sentencing. As someone struggling with substance abuse since age 15, who had unfortunately not reached out for the support of his family during the pendency of his drug addiction, especially during his formative years,[1] Mr. Roque has had problems originating from drug use at a young age. (PSIR ¶¶ 29, 79, 80). Though Mr. Roque has stated previously that he does not believe that he is addicted or an alcoholic, he does recognize that he has problems with drug use, and he wants in rehabilitation.

Substance abuse should not be used against Mr. Roque, but instead viewed as the "history and characteristics of defendant." 18 U.S.C. § 3553(a)(1). As a young teenager, someone must have influenced him to start using drugs, and someone, a supplier, was supplying drugs to him. Drugs like cocaine are highly addictive, and especially when combined with alcohol, severely affect one's judgment. Mr. Roque was doing this on a daily basis since he was 15, so it is reasonable to assume that Mr. Roque has struggled with addiction since then.

As such, Mr. Roque needs to and has stated his is amenable to continuing the treatment for substance abuse rehabilitation at the Metropolitan Correctional Center. (PSIR, ¶ 82). This is vital in terms of keeping him from re-entering the drug-trafficking trade. In addition, Mr. Roque he has a supportive family, and good parents. (PSIR, ¶ 68). His family and wife will be able to support him with rehabilitation and be accountable for him upon his release.

Furthermore, Mr. Roque is amenable to the recommendation for a GED course, as he had

---

[1] This is, unfortunately, common for young people addicted to drugs.

attended a continuation school to obtain credit hours before finding out that they did not transfer, and so he withdrew from the program. (PSIR, ¶ 84). As the former owner and operator of an auto body repair and paint business, Mr. Roque has the skills and knowledge to make an honest living, and his father and older brother, who were also in the auto body repair and paint business, can help him if assistance is necessary. (PSIR, ¶ 87). Mr. Roque's ability to transition back into society after release without re-offending is high.

## V. Conclusion

Pursuant to the "parsimony principle," Mr. Roque respectfully requests that this Honorable Court take into consideration all of the facts, circumstances, and arguments presented above, and sentence Mr. Roque to the minimum period of imprisonment necessary to accomplish the goals of criminal punishment under 18 U.S.C. § 3553(a).

Respectfully submitted

s/ Kirt J. Hopson\_\_\_\_\_
Attorney for Defendant,
EDGAR ROQUE

## CERTIFICATE OF SERVICE

I, Kirt J. Hopson, hereby certify that on the 5th day of July 2018, I caused to be electronically filed the foregoing **DEFENDANT EDGAR ROQUE'S OBJECTIONS TO PSIR, SENTENCING ANALYSIS, AND SENTENCING MEMORANDUM** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                                 s/ Kirt J. Hopson_____
                                                 KIRT J. HOPSON, ESQ.
                                                 Law Office of Kirt. J. Hopson.
                                                 7847 Florence Ave. Suite 112
                                                 Downey, CA 90240
                                                 T: 562-861-6313